1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11  GENERAL CHARLES "CHUCK" YEAGER,
    (RET.) and GENERAL CHUCK YEAGER
12  FOUNDATION,

13           Plaintiffs,              NO. CIV. 2:08-00102 WBS JFM

14      v.                            ORDER RE: MOTION TO DISMISS

15  CONNIE BOWLIN, ED BOWLIN, DAVID
    MCFARLAND, AVIATION AUTOGRAPHS, a
16  non-incorporated Georgia business
    entity, BOWLIN & ASSOCIATES, INC.,
17  a Georgia Corporation, SPALDING
    SERVICES, INC., a Georgia
18  Corporation, INTERNATIONAL
    ASSOCIATION OF EAGLES, INC., an
19  Alabama Corporation, and DOES 1
    to 100, inclusive,
20
             Defendants.
21

22                              ----oo0oo----

23           Plaintiffs General Charles "Chuck" Yeager, (Ret.) and

24  the General Chuck Yeager Foundation ("Foundation") filed this

25  lawsuit alleging various claims against defendants Connie Bowlin,

26  Ed Bowlin, David McFarland, Aviation Autographs, Bowlin and

27  Associates, Inc., Spalding Services, Inc., and International

28  Association of Eagles, Inc.  Connie Bowlin, Ed Bowlin, Aviation

                                     1

1    Autographs, and Bowlin and Associates, Inc.[1] now move to dismiss

2    plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure

3    12(b)(6) for failure to state a claim upon which relief may be

4    granted and Rule 9(b) for failure to plead fraud with

5    specificity.  Defendants also move for a more definite statement

6    pursuant to Rule 12(e).

7    I.   Factual and Legal Background

8             General Yeager is a well-known figure from American

9    aviation history and has a "valuable identity and property

10   interest arising out of his accomplishments . . . ." (Compl. ¶¶

11   2, 6-8.)  Because of his fame, he "charges, and receives, a fee

12   for the commercial use of his name, image, and/or identity, and

13   additionally charges for any endorsement of products or

14   companies. [He] also charges a fee for providing his autograph

15   in commercial or business settings." (Id. at ¶ 9.)  The

16   Foundation is an organization dedicated to teaching and

17   illustrating the ideals of Yeager. (Id. at ¶ 10.)  It receives

18   funding through Yeager's appearances and marketing efforts.

19   (Id.)

20            Defendant Aviation Autographs is a Georgia business

21   that obtains and sells autographed materials. (Id. at ¶ 11.)

22   Aviation Autographs sells these materials through phone orders

23   and on the internet. (Id.)  Defendant Bowlin and Associates,

24   Inc. is in the business of aviation sales and consulting. (Id.

25   at ¶ 15.)  Defendants Connie and Ed Bowlin, residents of the

26

27        [1]  Defendants David McFarland, Spalding Services, Inc.,
     and International Association of Eagles, Inc., do not join their
28   co-defendants in the instant motion.

2

State of Georgia, are the owners of Aviation Autographs and
Bowlin and Associates, Inc.  (Id. at ¶¶ 12-13, 15.)

Aviation Autograph's website allegedly features prints,
models, books, and other merchandise bearing or utilizing
plaintiff's name, likeness, and identity "in an attempt to
capitalize and utilize [p]laintiff's fame and reputation to
bolster, aid and increase [d]efendants' sales of aviation
memorabilia."  (Id. at ¶¶ 53, 57.)  Plaintiffs insist they have
not consented to the use of Yeager's name in connection with the
sale of these products and that Yeager has not been compensated
for this use.  (Id. at ¶ 55.)  Furthermore, statements on the
website are allegedly false and misleading because they suggest
that Yeager and the Bowlins maintain a current friendship.  (Id.
at ¶ 64.)  Yeager further asserts that he has "withdrawn
permission for the [d]efendants to sell any prints, lithographs
or memorabilia described in [the] Complaint."  (Id. at ¶¶ 26, 43,
45, 50.)

Yeager purportedly attended various events in or before
2003 without charging his usual appearance fees because the
Bowlins or unspecified defendants fraudulently represented to him
that the proceeds from such events would go toward charitable
purposes.  (Id. at ¶ 111; see also id. at ¶¶ 24, 30, 32, 36, 38,
112(b)-(c), 121(a)-(b)) (regarding the "Leiston Legends" and
"Tribute to Aces" Symposium).)  Yeager also purportedly signed
hundreds of lithographs without charging his usual autographing
fees because the Bowlins or unspecified defendants fraudulently
represented to him that the proceeds from the sales of such
prints would go toward charitable purposes.  (Id. at ¶¶ 19-20,

1  22, 112(a) (regarding the "Gathering of Eagles" events); id. at

2  ¶¶ 25, 30, 32, 34, 36, 38, 112(b)-(c), 121(a)-(b) (regarding the

3  "Leiston Legends" and "Tribute to Aces" Symposium).)  Allegedly,

4  none of the proceeds from the sales of the lithographs or

5  generated by the events have gone toward the charitable purposes

6  as represented.  (Id. at ¶¶ 112(a)-(c).)

7        Furthermore, Yeager also allegedly entered into various

8  oral agreements with the Bowlins in 2000 and 2003.[2]  The

9  agreements relate to different sets of lithographs, but all

10 contain substantially similar promises.  (See id. at ¶ 24

11 (alleging terms of an August 2003 agreement); id. at ¶ 26

12 (alleging terms of a 2000 agreement); id. at ¶ 32 (alleging terms

13 of an August 2003 agreement regarding the "Tribute to Aces"

14 Symposium); id. at ¶ 41 (alleging terms of a 2000 agreement

15 regarding the "Hey Pard" prints); id. at ¶¶ 45, 112(d) (alleging

16 terms of a 2000 agreement regarding the "F-15" prints); id. at ¶¶

17 50, 112(e) (alleging terms of a 2000 agreement regarding the

18 "First Day" covers); id. at ¶¶ 112(c), 121(a) (alleging terms of

19 agreement regarding the "Leiston Legends" lithographs).)

20        In these agreements, Yeager allegedly authorized the

21 Bowlins to sell signed prints in exchange for a percentage of the

22 proceeds, and unsigned prints in exchange for a royalty payment.

23 (Id. at ¶¶ 26, 45, 50, 112(d)-(e).)  These agreements also

24 provided that Yeager would retain one-third of the prints for his

25 own use.  (Id. at ¶¶ 24, 32, 47, 112(c), 121(a).)  Furthermore,

26 _____

27 [2]  Although the factual allegations in the Complaint do
not specify whether the agreements were written or oral,
plaintiffs allege a claim for breach of oral agreement only and
28 do not allege a claim for breach of written agreement.

4

1   as to each agreement, Yeager "retained full and sole discretion
2   to set or alter the terms upon which any of the lithographs,
3   signed or unsigned, might be offered for sale." (Id. at ¶¶ 24,
4   32, 41, 45, 50.)  Finally, if an agreement required Yeager to
5   travel, it also provided that he would be reimbursed for his
6   first class travel and hotel expenses.  (Id. at ¶¶ 26, 121(a).)

7        Notwithstanding these agreements, defendants allegedly
8   did not consult with Yeager in setting the sales prices for the
9   prints nor did they provide him with his promised one-third of
10  the prints.  (Id. at ¶¶ 27, 47, 112(a).)  Furthermore, the
11  Bowlins have not paid Yeager his share of the sale proceeds or
12  royalties and have not fully reimbursed him for his travel and
13  lodging expenses.  (Id. at ¶¶ 29, 39, 43, 112(c)-(e), 121(a),
14  121(c)-(d).)

15       Plaintiffs commenced this lawsuit on January 14, 2008
16  asserting nine claims against defendants, including: 1) breach of
17  the California common law right to privacy/right to control
18  publicity and likeness; 2) violation of California Civil Code
19  section 3344 (statutory right of publicity); 3) violation of the
20  Lanham Act, 15 U.S.C. § 1125(a), for false endorsement; 4)
21  violation of the California Business and Professions Code section
22  17200 (unfair business practices); 5) violation of the California
23  False Advertising Act, California Business and Professions Code
24  section 17500; 6) fraud; 7) breach of oral contract; 8) unjust
25  enrichment; and 9) conspiracy.
26  II.  Discussion

27       On a motion to dismiss, the court must accept the
28  allegations in the complaint as true and draw all reasonable

1  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

2  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

3  Scherer, 468 U.S. 183 (1984).  To survive a motion to dismiss, a

4  plaintiff needs to plead "only enough facts to state a claim to

5  relief that is plausible on its face." Bell Atl. Corp. v.

6  Twombly, 127 S. Ct. 1955, 1974 (2007).  Dismissal is appropriate,

7  however, where the plaintiff fails to state a claim supportable

8  by a cognizable legal theory.  Balistreri v. Pacifica Police

9  Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see also Conley v.

10 Gibson, 355 U.S. 41, 47 (1957) (complaint must "give the

11 defendant fair notice of what the plaintiff's claim is and the

12 grounds upon which it rests"), abrogated on other grounds by

13 Twombly, 127 S. Ct. at 1968.  "However, the court is not

14 required to accept legal conclusions cast in the form of factual

15 allegations if those conclusions cannot reasonably be drawn from

16 the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d

17 752, 754-55 (9th Cir. 1994).

18         When ruling on a motion to dismiss, the court generally

19 may not consider materials other than the facts alleged in the

20 complaint and documents that are made a part of the complaint.

21 Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996); Branch v.

22 Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other

23 grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th

24 Cir. 2002).  A court may, however, take judicial notice of

25 undisputed facts that are contained in extrinsic materials.  Mir

26 v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988);

27 Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

28         Defendants request this court to take judicial notice

6

of various documents filed in the cases of <u>Susan F. Yeager v.</u>
<u>Victoria D'Angelo</u>, Nevada County Superior Court Case No. 68834,
(Defs.' Req. for Judicial Notice in Supp. of Mot. to Dismiss Exs.
A-D), and <u>General Charles E. "Chuck" Yeager v. Susan Yeager</u>,
United States District Court, Eastern District of California,
Case No. 2:06-CV-01196-JAM-EFB.  (<u>Id.</u> Exs. E-F.)  Defendants do
not "request judicial notice of the truth of the substantive
content of these pleadings or of the findings made by the courts
in those proceedings."  (<u>Id.</u> at 3:8-9.)  Instead, they request
judicial notice "of the fact and content of the[] pleadings as
[they] relate to the notice that [p]laintiffs had of their
potential claims," because Yeager was a party to both of the
actions.  (<u>Id.</u> at 3:10-11.)  Plaintiffs do not oppose defendants'
request, and rely on some of the documents in making arguments in
their opposition brief.

        The court will accordingly take judicial notice of
these materials.  Fed. R. Evid. 201(b); <u>see also</u> <u>United States ex</u>
<u>rel. Robinson Rancheria Citizens Council v. Borneo Inc.</u>, 971 F.2d
244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings
in other courts, both within and without the federal judicial
system, if those proceedings have a direct relation to matters at
issue.'") (citations omitted).  The judicially noticed documents
"directly relate" to whether and when Yeager had notice of his
potential claims such that they would now be barred by the
applicable statutes of limitations.  <u>See</u> <u>Ritchey v. Upjohn Drug</u>
<u>Co.</u>, 139 F.3d 1313, 1319-20 (9th Cir. 1998) (court may play "the
strobe of judicial notice" upon the pleadings when it appears
that the action is barred by the statute of limitations).

1        A.   <u>Breach of Oral Contract</u>

2            The statute of limitations for breach of oral contract

3   under California law is two years.  Cal. Civ. Proc. Code § 339.

4   A cause of action on an oral contract accrues, and the statute of

5   limitations begins to run, at the time the contract is breached.

6   <u>Cochran v. Cochran</u>, 56 Cal. App. 4th 1115, 1124 (1997).

7            In their opposition brief, plaintiffs do not argue that

8   the breach of oral agreement claim accrued within the two year

9   statutory period.  Instead, plaintiffs argue that the judicially

10  noticed documents "serve to change the contract from [an oral]

11  agreement into a written agreement--bearing a longer [four year]

12  statute of limitations."  (Pls.' Mem. in Opp'n to Defs.' Mot. to

13  Dismiss 2:17-19.)  The cases cited by plaintiffs concern whether

14  certain writings were sufficient to constitute contracts; they do

15  not state, as plaintiffs contend, that an oral agreement can be

16  changed into a written agreement.  (See <u>id.</u> at 6:4-17 (citing

17  <u>Ashley v. Vischner</u>, 24 Cal. 322 (1864), <u>Osment v. McElrath</u>, 68

18  Cal. 466 (1866), <u>Melone v. Ruffino</u>, 129 Cal. 514 (1900), and

19  <u>Simmons v. Burge Co.</u>, 52 F. Supp. 629, 634 (1943)).)

20           Plaintiffs have alleged a claim for breach of oral

21  agreement and the applicable statute of limitations is two years.

22  (See Compl. ¶ 120 ("At various times, [d]efendants entered into

23  Oral Agreements with [p]laintiff."); <u>id.</u> at ¶ 121 ("Defendants

24  have breached their oral agreements with [p]laintiff.").)

25  Plaintiffs' allegations suggest that the statute of limitations

26  began to run as early as 2003 or even 2000, since Yeager would

27  have known then whether he was reimbursed for his travel and

28  lodging expenses, whether he retained the promised number of

1   prints, and whether he was compensated for the prints sold.

2   Although plaintiffs allege that defendants "continue" not to

3   compensate plaintiffs, plaintiffs do not allege that the

4   agreements were breached within the two year statutory period.

5   (Id. at ¶¶ 121(c)-(d).)

6          Further, in arguing that a four year statute of

7   limitations applies, plaintiffs concede that they were on notice

8   of their breach of contract claim by July 2004, well outside the

9   applicable two year statute of limitations period. (See Pls.'

10  Mem. in Opp'n to Defs.' Mot. to Dismiss at 7:4-8 ("The documents

11  attached and incorporated by [] [d]efendants show that []

12  [p]laintiffs were not provided with a detailed inventory and

13  report on commissions paid by [d]efendants until July 6, 2004"

14  and plaintiffs "would not have been aware of the improper

15  accounting and financial underpayments until this point in

16  time."); id. at 2:19-20 ("[T]he [judicially noticed] documents

17  clearly demonstrate [d]efendants did not provide the information

18  serving to put [p]laintiffs on notice of their [breach] claim

19  until July, 2004 . . . .").

20          Given plaintiffs' allegations and admitted notice, the

21  court will grant defendants' motion to dismiss plaintiffs'

22  seventh claim for breach of oral contract.[3]  Counsel for

23  defendants appears to acknowledge, however, that if subsequent

24  breaches continued to occur within the statute of limitations

25  period, plaintiffs would have a claim for those breaches.

26

27          [3]   Since the breach of oral agreement claim will be denied
    on statute of limitations grounds, the court need not address
    defendants' argument that the claim should be dismissed because
28  the agreements, as alleged, are illusory.

1  Plaintiffs will therefore be free to amend their claim to allege

2  breaches within the statutory period.

3         B.    Privacy Claims

4         Defendants contend that plaintiffs' first, second, and

5  third claims--breach of the California common law right to

6  privacy/right to control publicity and likeness; violation of

7  California Civil Code section 3344 (statutory right of

8  publicity); and violation of the Lanham Act, 15 U.S.C. § 1125(a),

9  for false endorsement--are time-barred because of the single

10 publication rule.

11        The single publication rule provides that "[n]o person

12 shall have more than one cause of action for damages for . . .

13 invasion of privacy or any other tort founded upon any single

14 publication or exhibition or utterance, such as any one issue of

15 a newspaper or book or magazine or any one presentation to an

16 audience or any one broadcast over radio or television or any one

17 exhibition of a motion picture."  Cal. Civ. Code § 3425.3.

18 "Under the single-publication rule, with respect to the statute

19 of limitations, publication generally is said to occur on the

20 'first general distribution of the publication to the public.'"

21 Shively v. Bozanich, 31 Cal. 4th 1230, 1245 (2003) (citations

22 omitted).  The single publication rule has been held to apply to

23 statements published on the internet.  Traditional Cat Ass'n,

24 Inc. v. Gilbreath, 118 Cal. App. 4th 392, 394 (2004).

25        The applicable statute of limitations for plaintiffs'

26 first and second claims is two years.  Cal. Civ. Proc. Code §

27 339; Long v. Walt Disney Co., 116 Cal. App. 4th 868, 873 (2004);

28 Cusano v. Klein, 264 F.3d 936, 949-50 (9th Cir. 2001).  The

applicable statute of limitations for plaintiffs' third claim is
less certain since the Lanham Act does not contain its own
statute of limitations provision.  The general rule in the
absence of such a provision is to borrow the most analogous
statute of limitations from state law.  See Polar Bear Prods.,
Inc. v. Timex Corp., 384 F.3d 700, 720 n. 17 (9th Cir. 2004);
Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829,
836-37 (9th Cir. 2002).  Given the nature of plaintiffs'
allegations, the most analogous statute of limitations from state
law would be either the two year statute applicable to right to
privacy claims, or the three year statute applicable to fraud
claims.

Defendants argue plaintiffs' first three claims are now
time-barred given the applicable statutes of limitations "because
the allegedly affronting materials were posted on the internet
years ago," and under the single publication rule, the claims
accrued when the allegedly unauthorized material was first
published on the internet.  (Defs.' Mem. in Supp. of Mot. to
Dismiss 21:15-16, 23:14-17.)

Although plaintiffs allege ongoing use of Yeager's name
and image in connection with sales on the Aviation Autograph's
website as early as 2000 and 2003, they also allege that there
was a republication of the statements on the Aviation Autograph's
website.  (Compl. ¶¶ 77, 85, 96, 101, 109); see also Kanarek v.
Bugliosi, 108 Cal. App. 3d 327, 332 (1980) (stating that the
single publication rule may not be available when a defendant
republishes information); (Compl. ¶¶ 37, 46, 48, 53-54, 56-65, 67
(referencing unauthorized publications on the Aviation

11

1  Autograph's website without stating when the alleged publications
2  or republications were made).)   It is unclear at this stage of
3  the proceeding whether the website was changed or modified in any
4  material way such as to constitute a republication sufficient to
5  extend the statute of limitations.   Accordingly, defendants'
6  motion to dismiss plaintiffs' first, second, and third claims
7  must be denied.

8       C.   <u>Unjust Enrichment</u>

9            Like plaintiffs' privacy claims, their unjust
10 enrichment claim relies on defendants' purported unauthorized use
11 of Yeager's name, likeness, and identity to advertize and endorse
12 their products.   Since plaintiffs also allege republication as to
13 this claim on an unspecified date, the court cannot determine at
14 this stage of the proceeding when the statute of limitations
15 accrued, and will deny defendants' motion to dismiss plaintiffs'
16 eighth claim for unjust enrichment.   (Compl. ¶ 127.)

17      D.   <u>Fraud</u>

18           Plaintiffs' sixth claim alleges fraud, which must be
19 alleged with particularity, "with a high degree of
20 meticulousness." <u>Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1022
21 (9th Cir. 2000); Fed. R. Civ. Proc. 9(b).   Specifically, the
22 allegations must "identify the time, place, and content of the
23 alleged misrepresentation so that the defendant can identify the
24 statement." <u>Smith v. Allstate Ins. Co.</u>, 160 F. Supp. 2d 1150,
25 1152 (S.D. Cal. 2001).   The plaintiff must also "plead facts
26 explaining why the statement was false when it was made." <u>Id.</u>
27 Rule 9(b) not only gives notice to defendants of the specific
28 fraudulent conduct against which they must defend, but also

deters the filing of complaints as a pretext for the discovery of
unknown wrongs, protects defendants from the harm that comes from
being subject to fraud charges, and prohibits plaintiffs "'from
unilaterally imposing upon the court, the parties and society
enormous social and economic costs absent some factual basis.'"
<u>Bly-Magee v. California</u>, 236 F.3d 1014, 1018 (9th Cir. 2001).
Dismissal is the appropriate remedy for failure to comply with
Rule 9(b). <u>E.g.</u>, <u>Jenkins v. Commonwealth Land Title Ins. Co.</u>, 95
F.3d 791, 796 (9th Cir. 1996).

Plaintiffs allege fraud as to the Gathering of Eagles
event, the Tribute to Aces weekend, the Leiston Legends, the F-15
prints, and the First Day Covers.  As to each of these alleged
instances of fraud, plaintiffs fail to meet the heightened
pleading requirements of Rule 9(b).  With the Gathering of Eagles
event, for example, plaintiffs do not allege who made the
fraudulent representations or when the representations were
made.  (<u>See</u> Compl. ¶ 112(a) (alleging unspecified "defendants"
"repeatedly" made false and fraudulent representations to
Yeager).)  As to the Tribute to Aces and Leiston Legends events,
plaintiffs do not allege when the Bowlins allegedly made any
false representations to Yeager.  (<u>See</u> <u>id.</u> at ¶¶ 24-39, 112(b)-
(c).)  With respect to the F-15 prints and the First Day Covers,
plaintiffs not only fail to allege the maker and the recipient of
any misrepresentations, but they also fail to allege the time,
place, and content of the alleged misrepresentations, and why
they were false when made.  (<u>See</u> <u>id.</u> at ¶¶ 45-52, 112(d)-(e).)
Accordingly, the court will grant defendants' motion to dismiss
plaintiffs' sixth claim for fraud.

13

appropriate

1        E.   Conspiracy

2             Defendants move to dismiss plaintiffs' ninth claim

3   because it purportedly alleges "conspiracy" without an underlying

4   tort.  Plaintiffs did not challenge this argument in their

5   opposition brief and at oral argument plaintiffs' counsel

6   conceded this claim should be dismissed.  Accordingly, the court

7   will grant defendants' motion to dismiss plaintiffs' ninth claim

8   for conspiracy.

9        F.   Motion to Dismiss Complaint and/or for a More Definite

10            Statement

11            Defendants also move to dismiss the Complaint, or in

12   the alternative, for a more definite statement on the grounds

13   that the Complaint "fails to allege which [p]laintiff is

14   asserting each claim, and against which [d]efendant the claim is

15   being made."[4]  (Defs.' Mem. in Supp. of Mot. to Dismiss 24:12-

16

17        [4]   Defendants also argue that plaintiffs allege no facts
18   to show that the Foundation has standing to pursue any of its
     claims.  "Article III standing requires the plaintiff to
19   establish standing for each challenge he wishes to bring and each
     form of relief he seeks."  Sacks v. Office of Foreign Assets
20   Control, 466 F.3d 764, 771 (9th Cir. 2006).  A motion to dismiss
     for failure to state a claim under Rule 12(b)(6) is proper where
21   the complaint demonstrates that the plaintiff lacks standing.
     Id.  To establish standing, the Foundation must allege an injury
22   to it "that is 'distinct and palpable,' as opposed to merely
     '[a]bstract,' and the alleged harm must be actual or imminent,
23   not 'conjectural' or 'hypothetical.'"  Whitmore v. Arkansas, 495
     U.S. 149, 155 (1990) (citations omitted) (alteration in
24   original).  Additionally, the Foundation "must satisfy the
     'causation' and 'redressability' prongs" of Article III "by
25   showing that the injury 'fairly can be traced to the challenged
     action' and 'is likely to be redressed by a favorable
26   decision.'"  Id. (citations omitted).  As defendants acknowledge
     however, the Complaint is frequently cast in terms of the
27   "plaintiffs," and not in reference to Yeager alone; thus, facts
     supporting the Foundation's standing are plentiful.  Further, the
28   Complaint specifically alleges that the Foundation receives
     funding through Yeager's appearances and marketing efforts,

                                    14

14.)  The Federal Rules of Civil Procedure, however, only require
"'a short and plain statement of the claim showing that the
pleader is entitled to relief' in order to 'give the defendant
fair notice of what the . . . claim is and the grounds upon which
it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964
(2007) (omission in original) (quoting Federal Rule of Civil
Procedure Rule 8(e)(2).)

        The Complaint alleges facts specific to defendants Ed
Bowlin, Connie Bowlin, and Aviation Autographs and thus, gives
them fair notice of the claims made against them.  The Complaint
does not, however, allege any facts pertaining to defendant
Bowlin and Associates, Inc.s' involvement in this lawsuit.  As
such, the Complaint does not give "fair notice" of what claim or
claims plaintiffs are alleging against it.  Accordingly, the
court will grant defendants' motion to dismiss Bowlin and
Associates, Inc.

        "A party may move for a more definite statement of a
pleading to which a responsive pleading is allowed but which is
so vague or ambiguous that the party cannot reasonably prepare a
response."  Fed. R. Civ. Pro. 12(e).  With respect to those
claims which the court has not dismissed by this order, the
allegations in the Complaint are sufficient to allow defendants
Ed Bowlin, Connie Bowlin, and Aviation Autographs to ascertain
the nature of the claims against them, the court will deny their
motion for a more definite statement.  <u>See</u> <u>Advanced Microtherm,</u>

---

allowing for the reasonable inference that it has been injured by
defendants' purported misconduct.  Accordingly, plaintiffs have
sufficiently alleged that the Foundation has standing.

1   <u>Inc. v. Norman Wright Mech. Equip. Corp.</u>, No. 04-02266, 2004 WL

2   2075445, at *12 (N.D. Cal. Sept. 15, 2004) ("Motions for more

3   definite statement are proper only where a complaint is so

4   indefinite that the defendant cannot ascertain the nature of the

5   claim being asserted.").

6          IT IS THEREFORE ORDERED that defendants' motion to

7   dismiss plaintiffs' Complaint be, and the same hereby is, GRANTED

8   as to all claims against defendant Bowlin and Associates, Inc.

9   only, and as to the sixth, seventh and ninth claims against all

10  remaining defendants; and

11         IT IS FURTHER ORDERED that defendants' motion for a

12  more definite statement be, and the same hereby is, DENIED.

13         Plaintiffs are given thirty days from the date of this

14  Order to file an amended complaint consistent with this Order.

15  DATED:  August 5, 2008

16

17  _____

18  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28