UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GENERAL CHARLES "CHUCK"
YEAGER,(RET.), and GENERAL
CHUCK YEAGER FOUNDATION,

        NO. CIV. 2:08-102 WBS JFM

    Plaintiffs,

  v.                    <u>ORDER RE: COSTS</u>

CONNIE BOWLIN, ED BOWLIN,
DAVID MCFARLAND, AVIATION
AUTOGRAPHS, a non-incorporated
Georgia business entity,
BOWLIN & ASSOCIATES, INC., a
Georgia corporation,
INTERNATIONAL ASSOCIATION OF
EAGLES, INC., an Alabama
corporation, SPALDING
SERVICES, INC., and DOES 1
through 100, inclusive,

    Defendants.
_____/

----oo0oo----

        On January 6, 2010, the court entered final judgment in this case in favor of defendants pursuant to the court's January 6, 2010 Order. Defendants Connie Bowlin, Ed Bowlin, Bowlin & Associates, Inc., and Aviation Autographs submitted a cost bill

1

totaling $8,131.65 on January 19, 2010. (Docket No. 137.) On January 29, 2010, the court issued an Order allowing defendants' costs, noting that plaintiffs did not object. (Docket No. 139.) Plaintiff Charles Yeager ("Yeager") submitted objections to defendants' bill of costs on February 1, 2010. (Docket No. 140.) The court then vacated and set aside its January 29, 2010 Order to consider Yeager's objections the costs bill, giving defendants an opportunity to respond. (Docket No. 147.) Presently before the court are Yeager's objections to defendants' bill of costs.

Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Rule 292(f) govern the taxation of costs to losing parties, which are generally subject to limits set under 28 U.S.C. § 1920. See 28 U.S.C. § 1920 (enumerating taxable costs); Fed. R. Civ. P. 54(d)(1) ("[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."); Local R. 292(f); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987) (limiting taxable costs to those enumerated in § 1920).

The court exercises its discretion in determining whether to allow certain costs. See Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1997) (holding that the district court has discretion to determine what constitutes a taxable cost within the meaning of § 1920); Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 177 (9th Cir. 1990) (same). The losing party has the burden of overcoming the presumption in favor of awarding costs to the prevailing party. See Russian River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136, 1144 (9th Cir. 1998) (noting that the presumption "may only be overcome by pointing to

2

some impropriety on the part of the prevailing party"); Amarel, 102 F.3d at 1523; see also Local R. 292(d) ("If no objection is filed, the Clerk shall proceed to tax and enter costs.").

I. Objections to Fees for Service

Defendants claim costs of $235.49 for service of subpoenas. Yeager objects to $179.99 of these costs on the ground that no provision of 28 U.S.C. § 1920 provides for the recovery of postage or costs of overnight mail. However, defendants may recover for the costs in the private serving of summonses or subpoenas under § 1920(1). See Alfex Corp. v. Underwriters Lab., Inc., 914 F.2d 175, 178 (9th Cir. 1990) ("Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)."). Fees for service by private parties are taxable "to the extent they do not exceed the amount allowable for the same service by the Marshal." Local R. 292(f)(2).

The Marshal's Office charges $8.00 per item for service by mail and $55.00 per hour for personal service. See 28 C.F.R. §§ 0.114(2)-(3). Defendants' costs of $165.59 for postage for service of thirty subpoenas averages approximately $5.52 per item, well below the amount charged by the Marshal. Accordingly, these costs will be allowed. However, defendants' use of Federal Express for service of a subpoena on Victoria Yeager cost $14.40, which is above the amount the Marshal's Office charges for service by mail. Accordingly, the court will only allow defendant to recover $8.00 worth of the costs of this instance of service by mail, and disallow the additional cost.

II. <u>Fees of Court Reporters for Transcripts Obtained for Use in the Case</u>

Defendants claim costs of $ 5,891.64 for fees of court reporters for transcripts obtained for use in the case. Yeager objects to these costs on the grounds that: (1) defendants provide no facts indicating these costs were necessarily obtained for use in the case, (2) the court reporter's invoice does not specify the services performed for the depositions of Yeager and Victoria Yeager ("the Yeagers"), and (3) the video recording of depositions was not necessary.

A. <u>"Necessarily Obtained for Use in the Case"</u>

The depositions taken of the Yeagers and defendants Connie and Ed Bowlin were necessarily obtained for use in this case. The Yeagers were critical witnesses and defendants relied heavily on these depositions in their motion for summary judgment. Accordingly, the court will not disallow the costs of the depositions on this ground.

B. <u>Specification of Services Performed in the Yeagers Depositions</u>

Yeager contends that it is impossible to determine if the costs for the Yeagers' depositions are reasonable because the invoices for the depositions supplied with the bill of costs do not contain an itemized assessment of the services performed at the depositions. However, defendants provided plaintiffs with such an itemized invoice on January 26, 2010, and the invoice was provided by Yeager's counsel in his objections. (<u>See</u> Docket No. 140, Pl.'s Objections Ex. A.) Accordingly, the court will not disallow these costs.

4

C.  <u>Video Recording</u>

Defendants claim $2,407.50 in costs for video recording of the depositions of Victoria and Charles Yeager.  § 1920(2) allows for recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Yeager objects to defendants' use of both stenographic transcripts and video transcripts, arguing that defendants have not shown why the use of both mediums was necessary.  Courts have awarded costs for both a videotaped and stenographic transcript of a deposition when both were reasonably necessary for the litigation.  See <u>Tilton v. Capital Cities/ABC, Inc.</u>, 115 F.3d 1471, 1478 (10th Cir. 1997); <u>Morrison v. Reichhold Chemicals, Inc.</u>, 97 F.3d 460, 464-65 (11th Cir. 1996); <u>Beamon v. Marshall & Ilsley Trust Co.</u>, 411 F.3d 854, 864 (7th Cir. 2005); <u>BDT Prods., Inc. v. Lexmark Int'l, Inc.</u>, 405 F.3d 415, 419-20 (6th Cir. 2005); <u>Cherry v. Champion Int'l Corp.</u>, 186 F.3d 442, 449 (4th Cir. 1999).

Defendants contend that the videotaped depositions were necessary because the Yeagers were crucial witnesses who would need to be impeached at trial and there was concern that Yeager would be unable to testify at trial due to his advanced age.  (Defs.' Response 4:10-15.)  This rationale fails to explain why both a videotaped and printed transcript were necessary, since a printed transcript alone could easily have been used to impeach the Yeagers and substitute for any inability of Yeager to testify.  Something more beyond "convenience or duplication to ensure alternative methods of presenting materials at trial" is needed to tax costs for both a printed and videotaped deposition

transcript. <u>Cherry</u>, 186 F.3d at 449. Accordingly, the court will disallow the video recording costs.

III. <u>Fees for Exemplification and Copies</u>

Defendants claim $1,890.82 in costs for copying and exemplification of papers. Yeager objects to these costs on the grounds that: (1) defendants provide no facts that the costs were necessarily obtained for use in the case, (2) costs for duplication of defendants' discovery documents were made out of convenience, not necessity, and (3) copying of documents from the <u>Wild, Carter, & Tipton v. Yeager</u> and <u>Yeager v. Munger</u> actions was unnecessary.

A. <u>Necessarily Obtained for Use in the Case</u>

Defendants presented a detailed bill of costs that indicated the date each copy was made and a description of the items copied. Many of these documents were used in defendants' motion for summary judgment, or at the very least in preparation for the motion. The court will not deny defendants' copying costs on the basis of this overarching objection. Defendants have, for the most part, presented standard copying costs necessary for trial. See <u>Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.</u>, 920 F.2d 587, 588 (9th Cir. 1990).

B. <u>Duplication of Defendants' Discovery Documents</u>

Yeager objects to the $170.63 cost for copying of defendants' discovery documents. "Recovery is allowed for costs of copies reasonably and necessarily procured in connection with discovery and use in presenting arguments and evidence to the Court, but not for in-house copying made for the convenience of counsel." <u>Royal Specialty Underwriting v. Himax Furniture Indus.</u>

Corp., No. 03-6586, 2005 U.S. Dist. LEXIS 28712, at *16 (E.D. Cal. Nov. 17, 2005). It is not clear that defendants' copying of their own discovery documents was necessary for use in the case. While defendants contend that some of these copies were made pursuant to plaintiffs' requests and some were made in an effort to pursue informal resolution of the case, it is not clear which, if any, of these copies were made for the purpose of presenting any argument to the court or complying with discovery requests. Defendants' statement in their response does not persuade the court that these copies were made for anything but defendants' own convenience in communicating with plaintiffs' counsel. Accordingly, the court will disallow these costs.

    C.    <u>Costs of Copies of the *Wild, Carter, & Tipton v. Yeager* and *Yeager v. Munger* Actions</u>

Defendants acquired copies of documents from two previous court actions involving Charles Yeager. <u>Wild, Carter, & Tipton v. Yeager</u> was an attorney fee dispute and cross-claim for malpractice between Yeager and his former attorney, Robert Eliason. Defendants claim they obtained copies of documents related to this action in an effort to identify potential admissions of statute of limitations problems with their claims in this case by plaintiffs. In Yeager's malpractice claim in the <u>Wild, Carter, & Tipton</u> action, Yeager claimed that Eliason failed to timely file a number of lawsuits on his behalf, including an action against defendants for the claims underlying this case. Defendants used portions of these court documents in their motion for summary judgment to bolster their statute of limitations arguments. Accordingly, these documents were necessarily used in

7

this case and taxation of costs for the <u>Wild, Carter, & Tipon</u> copies will be allowed.

<u>Yeager v. Munger</u> was a state court action by Yeager in which he sued Munger for infringement of his right to publicity. Defendants claim that copies of documents from this case were "likely to be relevant to assessing the merits of [p]laintiffs' claims against [d]efendants in this case." (Defs.' Response 6:23-24.) It is unclear to the court how this previous, unrelated lawsuit by Yeager was relevant or necessary to assessing the merits of an entirely different infringement claim. Accordingly, the court will not allow defendants' costs of $332.90 for copies of documents in the <u>Munger</u> case.

IV. <u>Summary</u>

After reviewing the bill, the court finds all other costs to be reasonable. In sum, the court allows:

```
Fees for Service:                              $   229.09
Fees of Court Reporters for Transcripts:         3,484.14
Fees for Witnesses:                                113.70
Fees for Exemplification and Copies:             1,387.29
                                               _____
```
**Total** **$5,214.22**

Accordingly, the cost of **$5,214.22** will be allowed.

IT IS SO ORDERED.

DATED: February 25, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE