UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GENERAL CHARLES "CHUCK"
YEAGER, (RET.), and GENERAL
CHUCK YEAGER FOUNDATION,

            Plaintiffs,

        v.

CONNIE BOWLIN, ED BOWLIN,
DAVID MCFARLAND, AVIATION
AUTOGRAPHS, a non-incorporated
Georgia business entity,
BOWLIN & ASSOCIATES, INC., a
Georgia corporation,
INTERNATIONAL ASSOCIATION OF
EAGLES, INC., an Alabama
corporation, SPALDING
SERVICES, INC., and DOES 1
through 100, inclusive,

            Defendants.
_____/

NO. CIV. 2:08-102 WBS JFM

MEMORANDUM AND ORDER RE:
MOTION FOR ATTORNEY'S FEES AND
COSTS

----oo0oo----

Having prevailed on their motion for summary judgment

(See Docket No. 135), defendants Connie and Ed Bowlin, Aviation

Autographs, and Bowlin and Associates, Inc. now move for an award

1

1  of attorney's fees and costs pursuant to California Civil Code
2  section 3344(a) and section 35(a) of the Lanham Act, 15 U.S.C.
3  1117(a).

4  I.   Factual and Procedural Background

5       Plaintiffs General Charles Yeager and the General Chuck
6  Yeager Foundation filed suit against defendants on January 14,
7  2008, for violations of California Civil Code section 3344
8  (statutory right of publicity); the Lanham Act, 15 U.S.C. §§
9  1051-1129; California's Unfair Competition Law ("UCL"), Cal. Bus.
10 & Prof. Code §§ 17200-17210; and the California False Advertising
11 Act, id. § 17500; as well as common law claims for breach of
12 right to privacy, fraud, breach of contract, unjust enrichment,
13 accounting, and equitable rescission.  (Docket No. 1.)
14 Defendants filed a motion to dismiss the original complaint,
15 which was granted with leave to amend.  (Docket No. 17).
16 Plaintiffs then filed a First and Second Amended Complaint.

17       On November 16, 2009, defendants Connie and Ed Bowlin,
18 Aviation Autographs, and Bowlin and Associates, Inc. moved for
19 summary judgment.  (Docket No. 103.)  The court granted that
20 motion in its entirety and entered judgment in favor of
21 defendants.  (Docket No. 135.)  Defendants filed a motion to
22 recover their attorney's fees and costs on February 2, 2010.
23 (Docket No. 141.)  In response to pervasive block billing in
24 defendants' initial billing statement, on April 23, 2010, the
25 court ordered defendants to submit an amended motion for
26 attorney's fees that did not use block billing.  (Docket No.
27 162.)  Defendants submitted an amended motion for attorney's fees
28 and amended billing statement that allocated time for each task

1  performed on May 3, 2010.  (Docket No. 163.)

2  II.  <u>Discussion</u>

3        Jurisdiction in this action is based on 28 U.S.C. §
4  1331 (federal question jurisdiction).  "In an action where a
5  district court is exercising its subject matter jurisdiction over
6  a state law claim, so long as 'state law does not run counter to
7  a valid federal statute or rule of court, and usually it will
8  not, state law denying the right to attorney's fees or giving a
9  right thereto, which reflects a substantial policy of the state,
10 should be followed.'"  <u>MRO Commc'ns, Inc. v. AT & T Corp.</u>, 197
11 F.3d 1276, 1281 (9th Cir. 1999) (citing <u>Alyeska Pipeline Serv.</u>
12 <u>Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 259 n.31 (1975)).  Thus,
13 when a federal court has federal question jurisdiction and
14 exercises supplemental jurisdiction over a state law claim, the
15 court may award attorney's fees under the applicable statute.
16 <u>See</u> <u>MRO Commc'ns</u>, 197 F.3d at 1281-83.

17        Defendants request attorney's fees and costs under both
18 California Civil Code section 3344(a) and section 35(a) of the
19 Lanham Act.  California Civil Code section 3344(a) provides for a
20 mandatory award of attorney's fees and costs to the prevailing
21 party on a section 3344 statutory right of publicity claim.  Cal.
22 Civ. Code § 3344(a) ("The prevailing party in any action under
23 this section shall also be entitled to attorney's fees and
24 costs."); <u>Bonner v. Fuji Photo Film</u>, No. Civ. 06-4372 CRB, 2008
25 WL 410260, at *2 (N.D. Cal. Feb. 12, 2008) (citing <u>Kirby v. Sega</u>
26 <u>of Am., Inc.</u>, 144 Cal. App. 4th 47, 62 (2006)).

27        "[T]he fee setting inquiry in California ordinarily
28 begins with the 'lodestar,' i.e., the number of hours reasonably

3

expended multiplied by the reasonable hourly rate." <u>PLCM Group v. Drexler</u>, 22 Cal. 4th 1084, 1095 (2000).  "The reasonable hourly rate is that prevailing in the community for similar work."  <u>Id.</u> (citing <u>Margolin v. Reg'l Planning Comm'n</u>, 134 Cal. App. 3d 999, 1004 (1982)).  The lodestar may then by adjusted upward or downward "by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award."  <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001).  The purpose of adjusting the lodestar is to fix the fee for the action in question at fair market value.  <u>Id.</u>

     A similar approach is applied under federal law.  The court first calculates the lodestar by taking the number of hours reasonably expended by the litigation and multiplying it by a reasonable hourly rate.  <u>Fisher v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).  The court may then adjust the lodestar based on an evaluation of the factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 536 F.2d 67 (9th Cir. 1975) that are not subsumed under the lodestar calculation.[1]  <u>Id.</u>

---

     [1]   The factors articulated by the Ninth Circuit in <u>Kerr</u> are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the

1   Federal law, unlike California law, does not allow for

2   contingency multipliers.  Compare City of Burlington v. Dague,

3   505 U.S. 557, 567 (1992) with Serano v. Priest, 20 Cal. 3d 25,

4   48-49 (1977).  As a contingency multiplier is not being asked for

5   in this case, the court's analysis of the reasonableness of

6   defendants' attorneys' fee award under either law will largely be

7   identical.  Given defendants' emphasis on section 3344(a) and its

8   mandatory nature, the court will begin its analysis of

9   defendants' fee award under California law.

10  A.   Lodestar Calculation

11  Defendants propose a lodestar figure of $296,673.50.

12  This amount accounts for the hours principally expended by Todd

13  M. Noonan, a partner of the law firm of Stevens, O'Connell &

14  Jacobs LLP ("Stevens O'Connell"), although certain fees generated

15  by other partners, associates, and paralegals are also included.

16  (See Noonan Decl. (Docket No. 145) ¶¶ 7, 14-15; Am. Mot.

17  Attorney's Fees (Docket No. 163) at 3.)  This amount does not

18  include approximately $33,745 worth of charges written off by

19  Stevens O'Connell in their bills to defendants.  (Id. ¶ 14.)  The

20  figure also includes an additional $1,200 for services provided

21  by defendants' Georgia-based counsel, Donald Taliaferro and

22  $12,440 in attorney's fees incurred in connection with the Bill

23  of Costs and defendant's reply brief to plaintiffs' opposition to

24  the motion.  (Id. ¶ 58; Am. Mot. Attorney's Fees at 3.)

25  Plaintiffs object to defendants' request for attorneys'

26

27  "undesirability" of the case, (11) the nature and length of the
    professional relationship with the client, and (12) awards in
28  similar cases.  Kerr, 526 F.2d at 70.

5

1   fees and costs on numerous grounds.  Plaintiffs primarily contend
2   that: (1) defendants' amended billing statements should be
3   rejected because they do not have sufficient evidence to support
4   them, (2) Stevens O'Connell's billing rates were unreasonable,
5   (3) much of the work done by Noonan could have done by
6   associates, paralegals, or secretaries at a cheaper cost, and (4)
7   defendants should be denied compensation and have their lodestar
8   amount reduced for billing related to attacks on the Yeagers'
9   character.

10              1.   Adequacy of Amended Billing Statements
11              Plaintiffs argue that defendants' amended billing
12   statements do not meet defendants' burden of proof because the
13   amended billing statements were not made contemporaneously and
14   lack adequate foundation as to their validity.  Although the
15   Ninth Circuit has "expressed a 'preference' for contemporaneous
16   records," it has "never held that they are absolutely necessary."
17   Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1121 (9th Cir. 2000);
18   see also United States v. $12,248 U.S. Currency, 957 F.2d 1513,
19   1521 (9th Cir. 1991); United States v. City & County of San
20   Francisco, 748 F. Supp. 1416, 1420 (N.D. Cal. 1990) (noting that
21   the use of reconstructed billing records "is an established
22   practice in this circuit").  "Basing the attorneys' fee award in
23   part on reconstructed records developed by reference to
24   litigation files and other records is not an abuse of
25   discretion."  Davis v. City & County of Sacramento, 976 F.2d
26   1536, 1542 (9th Cir. 1992) (citing Bonnette v. Cal. Health &
27   Welfare Agency, 704 F.2d 1465, 1473 (9th Cir. 1983)) rev'd in
28   part on other grounds by Davis v. City & County of Sacramento,

                                  6

1  984 F.2d 345 (9th Cir. 1993).

2         Defendants' amended billing statements, which list the
3  amount of time expended on each identified task instead of block
4  billing for all time for a given day, are sufficiently reliable.[2]
5  Noonan, Stevens O'Connell associate Daniel J. Croxall, and
6  paralegal Lucy Kellogg created the amended billing statements by
7  reviewing the original billing statements and then using their
8  personal recollections, customs and practices, and review of the
9  documents and correspondence created on each day to reconstruct
10  the amount of time spent on each task.  (Am. Noonan Decl. (Docket
11  No. 166) ¶¶ 3-6.; Croxall Decl. (Docket No. 164) ¶¶ 3, 6; Kellogg
12  Decl. (Docket No. 165) ¶¶ 3, 5-6.)  Unlike cases where a party
13  must reconstruct its billing records from scratch, defendants'
14  counsel had the assistance of contemporaneously created block
15  billed records when creating the amended billing statements,
16  thereby increasing the reliability of the reconstructed records.
17  The declarations submitted by defendants' counsel indicate that
18  the amended billing statements were created with reference to
19  defendants' litigation file, the previous bills, and with

20
21         [2]    Plaintiffs object to Noonan, Croxall, and Kellogg's
    declarations, as well as the amended billing statements
22  themselves.  Noonan, Croxall, and Kellogg's declarations are all
    based on their personal knowledge, and describe the methodology
23  used to create the amended billing statements.  Noonan also
    states that he has personal knowledge that the statements are
24  reliable.  Noonan, Croxall, and Kellogg utilized documents which
    were either available to plaintiffs as part of defendants' legal
25  file or privileged to construct the amended billing statements.
    These documents are properly submitted in support of defendants'
26  fee request.  See Fischer, 214 F.3d at 1121 (noting that fee
    requests based on reconstructed billing statements can be
27  proper).  Accordingly, plaintiffs' evidentiary objections on the
    grounds of lack of foundation, lack of personal knowledge,
28  hearsay, lack of access to documents refreshing recollection, and
    best evidence are overruled.

information within counsel's personal knowledge.  In light of the
foregoing facts, the court finds that the amended billing
statements are sufficiently reliable and adequate.  <u>See</u> <u>Davis</u>,
976 F.2d at 1542; <u>Fleming v. Coverstone</u>, No. 08cv355 WQH (NLS),
2009 WL 764940, at *4 (S.D. Cal. Mar. 18, 2009).

    2.  <u>Reasonable Rate</u>

    A reasonable rate is typically based upon the
prevailing market rate in the community for "similar work
performed by attorneys of comparable skill, experience, and
reputation."  <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205,
1210 (9th Cir. 1986); <u>see also</u> <u>Blum v. Stenson</u>, 465 U.S. 886,
895-96 n.11 (1984) ("[T]he burden is on the fee applicant to
produce satisfactory evidence . . . that the requested rates are
in line with those prevailing in the community."); <u>Drexler</u>, 22
Cal. 4th at 1095.  The relevant community is generally the forum
in which the court sits.  <u>Barjon v. Dalton</u>, 132 F.3d 496, 500
(9th Cir. 1997).

    Noonan seeks an hourly rate of $400 per hour for his
work and the work of fellow partner Brad Benbrook, $305 per hour
for associate Dan Croxall's work, and $135 per hour and $155 per
hour for the work of paralegals Lucy Kellogg and Greg Nelson,
respectively.  (<u>Id.</u>)  In support of his requested fee rate,
Noonan submits the declaration of Glenn W. Peterson, a partner at
the firm of Millstone, Peterson & Watts LLP and practicing
attorney in Sacramento since the late 1980s.  (Peterson Decl.
(Docket No. 142) ¶ 2.)  Mr. Peterson's practice focuses on
complex litigation with a "strong focus on intellectual property,
including trademark/copyright infringement and business torts."

1  (Id. ¶ 3.)  Mr. Peterson declares that "[f]or a complex right of

2  publicity/Lanham Act case such as this in federal court . . . a

3  rate of $400 is at the lower end of the market, if not [] below

4  market rate" and that "many lawyers in Sacramento would bill $450

5  to $500 per hour or more for matters such as this."  (Id. ¶ 4.)

6       Noonan also submits the declaration of Tory Griffin, a

7  partner of the law firm of Downey Brand LLP in Sacramento whose

8  practice includes intellectual property litigation and complex

9  commercial litigation.  (Griffin Decl. (Docket No. 143) ¶ 2.)

10  Mr. Griffin declares that "[t]he hourly rates for partners in

11  [his] firm have been established in light of the prevailing rates

12  in the Sacramento area for attorneys with [Downey Brand LLP's]

13  background and experience . . . and general range from $325 to

14  550 per hour for partner level lawyers."  (Id. ¶ 3.)  Mr. Griffin

15  concludes that in his opinion, for a matter such as this that

16  "was complex, involved a high profile plaintiff, and numerous

17  state and federal claims . . . an hourly rate of $400 for a

18  lawyer of Mr. Noonan's background and experience represents a

19  reasonable rate."  (Id. ¶ 4.)

20       Noonan lastly submits a declaration from Wesley C.J.

21  Ehlers, a partner at Pillsbury Winthrop Shaw Pittman LLP, who has

22  litigated antitrust, unfair competition, and intellectual

23  property disputes in the Sacramento area.  (Ehlers Decl. (Docket

24  No. 144) ¶¶ 2-3.)  Mr. Ehlers declares that "[f]or a complex

25  right of publicity/Lanham Act case such as this in federal court

26  . . . a rate of $400 is at the lower end of the market, if not

27  below market rate."  (Id. ¶ 5.)  Mr. Ehlers further states that a

28  $400 per hour rate "is below the customary rate that Pillsbury

would charge on an hourly basis for an attorney of Mr. Noonan's
background and experience for a matter such as this" and that
"many lawyers in Sacramento would bill $450 to $500 per hour or
more" for this case.  (Id.)

Plaintiffs argue that the rates proposed for Noonan,
Croxall, and the paralegals are unreasonable because they are
higher than the rates accepted as the prevailing hourly rate in
Sacramento by courts in this district.  Plaintiffs note that in
many cases, "[j]udges in this district have consistently found
$250 per hour to be a reasonable rate for an experienced attorney
working in this community." Belliveau v. Thomson Fin., Inc., No.
Civ. 2:05-1175 GEB DAD, 2007 WL 1660999, at *4 (E.D. Cal. June 6,
2007); see also Eiden v. Thrifty Payless Inc., 407 F. Supp. 2d
1165, 1171 (E.D. Cal. 2005) (Americans With Disabilities Act
case); Cummings v. Connell, 177 F. Supp. 2d 1079, 1088-89 (E.D.
Cal. 2001) (civil rights case), rev'd on other grounds, 316 F.3d
886 (9th Cir. 2003).

However, "in determining the prevailing market rate a
district court abuses its discretion to the extent it relies on
cases decided years before the attorneys actually rendered their
services." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 981
(9th Cir. 2008) (citing Bell v. Clackamas County, 341 F.3d 858,
869 (9th Cir. 2003) (holding it was an abuse of discretion to
apply market rates more than two years before the work was
performed)).  "The district court's function is to award fees
that reflect economic conditions in the district; it is not to
'hold the line' at a particular rate . . . ." Moreno v. City of
Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008).  Accordingly,

10

1   while the court can consider fees awarded by judges in this

2   district, those fees are by no means dispositive.  See id.

3        Moreover, the cases cited by plaintiffs for the

4   proposition that $250 per hour is a reasonable rate for Noonan's

5   work in this action are inapposite.  Unlike those cases, which

6   involved relatively simple civil rights or Americans with

7   Disabilities Act claims, litigation of this action required

8   specialized knowledge of the complexities of intellectual

9   property law in a suit involving a high profile plaintiff.

10  Defendants' counsel may accordingly be entitled to higher hourly

11  compensation than attorneys who litigate cases that do not

12  require such special skill or expertise.

13       The cases cited by plaintiffs also for the most part

14  involved attorneys for prevailing plaintiffs who were entitled by

15  statute to recover their fees from the opposing party, but never

16  expected to collect them from their own clients.  See, e.g.,

17  Eiden, 407 F. Supp. 2d at 1165; Cummings, 177 F. Supp. 2d at

18  1088-89.  In those cases, the attorneys typically have a

19  contingent fee contract in which the client is obligated to pay

20  only if he or she prevails, and then, of course, it is the

21  opposing party rather than the client who pays the fee.  In those

22  cases, a plaintiff's attorney cannot represent that the hourly

23  rate proposed to the court is the actual fee that the client

24  would pay.  See White v. GMRI, Inc., No. Civ. 04-0620 WBS KJM,

25  2006 WL 947768, at *2-3 (E.D. Cal. Apr. 12, 2006).

26       In contrast, in a case such as this the hourly rate

27  billed by the attorney is a rate which the client has agreed to

28  pay, and would in fact pay if it did not prevail.  It is also a

                                11

rate which the attorney regularly bills and collects from his
other clients for similar work.  In cases like this the
attorney's representation of the going rate for his services is
entitled to greater credibility.  Accordingly, defendants'
willingness to pay Noonan's $400 hourly rate is a strong
indication that his rate was a reasonable market rate for this
case.  See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253
F.3d 1332, 1337 (11th Cir. 2001).

Defendants have also presented substantial evidence in
the form of declarations from experienced litigators in the
Sacramento community indicating that partners with comparable
levels of experience to Noonan generally charge between $325 and
$500 per hour in the Sacramento area for intellectual property
disputes and actions under the Lanham Act.  (See Griffin Decl. ¶
3; Peterson Decl. ¶ 4; Ehlers Decl. ¶ 5.)  The declarations also
aver that a case involving a high profile plaintiff, multiple
state and federal claims, and the Lanham Act has a higher level
of complexity than an average case in the community, which the
court agrees is the case.  (See Griffin Decl. ¶ 3; Peterson Decl.
¶ 4; Ehlers Decl. ¶ 5.)

Although the Peterson and Ehlers declarations do not
use the exact phrase "prevailing rate" when describing the rates
employed by partners with experience levels comparable to Noonan
in Sacramento, both declarations indicate that a $400 per hour
rate is at the lower end of the Sacramento market, if not below
market for a case similar to this one. (Peterson Decl. ¶ 4;
Ehlers Decl. ¶ 5.)  Furthermore, the Griffin declaration states
that Downey Brand LLP's rate of $325 to $500 per hour for a

12

partner's work is set based on the prevailing rates in Sacramento.  Plaintiffs have presented no evidence to the contrary.

In the light of the findings of other courts in this district, the briefs, and the declarations submitted, the court finds that an hourly rate of $400 per hour is an appropriate rate for similar work performed by attorneys of similar experience and skill to Noonan and Benbrook in the Sacramento area.

However, defendants have not provided any evidence to the court to establish what a reasonable rate is for associate attorneys or paralegals in this community.  "Judges in this district have repeatedly found that [a] reasonable rate[ ] in this district [is] . . . $150 for associates." Eiden, 407 F. Supp. 2d at 1171; see also Belliveau, 2007 WL 1660999, at *4. Additionally, the paralegal rate "favored in this district" is $75 per hour.  Faerfers, 2008 WL 1970325, at *5 (quoting Robinson v. Chand, No. Civ. 2:05-1080 DFL DAD, 2007 WL 1300450, at *2 (E.D. Cal. May 2, 2007)).  The court agrees with these conclusions and given that defendants have presented no evidence to the contrary, will limit recovery of associates' fees to a rate of $150 per hour and paralegals' fees to $75 per hour.

Plaintiffs also object to the rates charged for a number of hours billed by Noonan, arguing that many tasks billed at Noonan's partner rate should have been delegated to an associate, paralegal, or secretary.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's adversary

1  pursuant to statutory authority." <u>Hensley</u>, 461 U.S. at 434.

2  Accordingly, the court should "not approve of '[t]he wasteful use

3  of highly skilled and highly priced talent for matters easily

4  delegable to non-professionals or less experienced associates.'"

5  <u>MacDougal v. Catalyst Nightclub</u>, 58 F. Supp. 2d 1101, 1105 (N.D.

6  Cal. 1999) (citing <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677

7  (3rd Cir. 1983)).  However, when looking at appropriate billing

8  rates for various tasks, the court,

9        may not attempt to impose its own judgment regarding the
    best way to operate a law firm, nor to determine if
10  different staffing decisions might have led to different
    fee requests.  The difficulty and skill level of the work
11  performed, and the result achieved--not whether it would
    have been cheaper to delegate the work to other
12  attorneys--must drive the district court's decision.

13 <u>Moreno</u>, 523 F.3d at 1115.

14      In support of their claim of overbilling, plaintiffs

15 submit a declaration from Gary A. Bresee, a partner of the law

16 firm of Barger & Wollen LLP, who has been involved in litigation

17 for twenty-one years, including litigation and consulting over

18 attorney fee disputes.  (<u>See</u> Bresee Decl. (Docket No. 157) ¶¶ 1-

19 2.)  Mr. Bresee contends that many tasks undertaken by Noonan

20 would normally be undertaken by an associate and reviewed by a

21 partner, and accordingly that Noonan's fees should be reduced to

22 an associate rate for two-thirds of the 57.2 hours expended on

23 this work.  (<u>Id.</u> ¶¶ 16-20, 22.)  Such work includes: personally

24 researching venue and personal jurisdiction issues on the motion

25 to dismiss; researching statute of limitations issues; drafting

26 joint status reports, stipulations to extend time, a motion for

27 sanctions, a stipulated protective order, and a motion to strike;

28 drafting discovery documents such as document requests, requests

14

for admission, and interrogatories; and spending four hours at an off-site document production.  (Id. ¶¶ 6-8).

          The court is skeptical that the firm model imposed by Mr. Bresee would necessarily have saved defendants any money. Noonan wrote off a substantial number of the hours he performed on tasks for them.  Noonan's expertise and independent work on the matter may very well have been more efficient than billing an associate to familiarize themselves with the facts, do the same work over a lengthier amount of time, and then have Noonan review their work.  See Moreno, 534 F.3d at 1114-15 ("The district court may have been right that a larger firm would employ junior associates who bill at a lower rate than plaintiff's counsel, but a larger firm would also employ a partner-likely billing at a higher rate than plaintiff's counsel-to supervise them . . . lead counsel can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely.  Modeling law firm economics drifts far afield of the Hensley calculus . . . .").  The court does not believe any of the aforementioned work performed by Noonan is below his skill level or necessitated the use of an associate to keep costs down, even if other firms would not have billed that way and accordingly will not change the billing rate for these tasks.

          Plaintiffs further contend that Noonan billed several tasks that could be performed by a paralegal at partner rates. "[P]aralegal work should be billed at an appropriate rate, regardless of the status of the person actually undertaking the work."  Robinson, 2007 WL 1300450, at *2.  Several tasks

undertaken by Noonan should be billed at a paralegal rate, including his preparation of a discovery timetable (7/22/08), case scheduling with the courtroom deputy (8/21/08), document organization (2/6/09), and correspondence over deposition dates (8/21/09).  See id. (including "preparing cover sheets, . . . e-filing documents, . . . scheduling matters, . . . preparing boilerplate documents, and organizing case files" as paralegal tasks).  Accordingly, the court will reduce the 3.6 hours spent on these tasks to a $75 per hour rate.

Plaintiffs finally argue that the court should eliminate tasks billed by paralegals that are purely secretarial or clerical from its lodestar calculation.  As this court has previously explained, secretarial tasks are generally not recoverable as attorney's fees because "the salaries and benefits paid to support staff are a part of the usual and ordinary expenses of an attorney in his practice, and are properly classified as overhead."  Eiden, 407 F. Supp. 2d at 1171 (internal quotation marks omitted); see also Ketih v. Volpe, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986).  A number of tasks performed by defendants' paralegals appear to have been clerical or secretarial in nature, such as copying (5/22/08), Bates labeling (5/22/08), and scanning documents (8/5/09).  Accordingly, the court will deduct 4.6 hours of paralegal work from its lodestar calculation.

### 3.  Hours Reasonably Expended

Plaintiffs also object to some of the hours expended by defendants' counsel.  Plaintiffs first object to defendants billing for time spent by Noonan consulting with fellow partner

16

Brad Benbrook.   While excessive conferencing with other attorneys can be prone to abuse, the amount of conferencing in this case is quite small; only 8.3 hours were billed for conferences over case strategy between Benbrook and Noonan.   (See Noonan Decl. ¶¶ 39-41.)   Consultation between lawyers can be an invaluable resource, especially in a case staffed as leanly as this one, where Noonan did a substantial portion of the work without assistance of other attorneys to try to minimize costs.   The court does not find the level of consultation between Benbrook and Noonan unreasonable, and accordingly will not eliminate Benbrook's hours from the lodestar.

Plaintiffs also object to defendants' request for $1,200 in fees for defendants' Georgia counsel, Donald Taliaferro and for defendants' additional request for $16,440 worth of work filing this fee motion and responding to plaintiffs' opposition. Defendants have not indicated what work Mr. Taliaferro performed for this case, how long he worked, or any billing documentation to that effect.   Accordingly, defendants have not met their burden such that the court may grant them attorney's fees for Mr. Taliafero's work.   However, plaintiffs have not supplied a valid reason for the court to deny defendants' request for attorney's fees incurred in filing the motion and responding to plaintiffs' opposition.   Given the protracted nature of the litigation and the response required by plaintiffs' vigorous opposition to the original fee motion, the additional work performed by defendants' counsel is not unreasonable.   Accordingly, the court will grant defendants their request for fees incurred in preparing their original motion and responding to plaintiffs' opposition

17

1  thereto.[3]

2         B.    Adjusting the Lodestar Calculation

3              After calculating the lodestar, the court must decide

4  whether to enhance or reduce the award in the light of particular

5  factors, including the novelty and difficulty of the case, the

6  skill displayed in presenting them, the extent the litigation

7  precluded other employment by the attorneys, and the contingent

8  nature of the fee award.  Ketchum, 24 Cal. 4th at 1132.  However,

9  "[t]here is no hard-and-fast rule limiting the factors that may

10 justify an exercise of judicial discretion to increase or

11 decrease a lodestar calculation."  Thayer v. Wells Fargo Bank,

12 N.A., 92 Cal. App. 4th 819, 834 (2001).  While defendants urge

13 that no adjustments are necessary, plaintiffs contend that the

14 lodestar calculation should be reduced because defendants'

15 billings include work on claims that are not eligible for

16 attorney's fees and irrelevant attacks on the Yeagers' character.

17             While some of the claims worked on by defendant are

18 non-fee bearing claims, under California law a prevailing party

19 may recover attorney's fees on a claim for which attorney's fees

20 are not available if it occurs in a case where a statutory claim

21 that allows for fees is present and the claims are so

22 interrelated that a separate accounting for them is impossible.

23 See Akins v. Enter. Rent-a-Car, 79 Cal. App. 4th 1127, 1133

24 (2000).  This rule has explicitly been applied to section 3344(a)

25 claims.  See, e.g. Kriby, 144 Cal. App. 4th at 62 n.7; Love v.

26 ─────────────────

27         [3]    While the court will award defendants these attorney's
   fees, it will reduce them in accordance with the hours supplied
28 in the amended billing statements and appropriate prevailing
   rates identified in this Order.

<u>Mail on Sunday</u>, No. Civ. 05-2298 ABC(PJWX), 2007 WL 2709975, at
*3 (C.D. Cal. Sept. 7, 2007).  The issues in this action were so
intertwined that apportionment between the claims would be nearly
impossible.  Plaintiffs' claims all related to the same set of
facts--namely that defendants allegedly used Yeager's name and
likeliness without his permission.  Plaintiffs' claims for breach
of the common law right to privacy, unfair business practices,
and violations of section 3344, the Lanham Act, and the
California False Advertising Act were all based upon the same
alleged misconduct by the Bowlins.

        Plaintiffs' subsequent common law claims for fraud,
breach of contract, accounting, unjust enrichment, and equitable
rescission were also all intertwined with defendants' defenses to
plaintiffs' misappropriation of likeness based claims.  One of
the elements for a claim for violation of section 3344 is a lack
of consent.  Cal. Civ. Code § 3344.  Plaintiffs' allegations
under section 3344 were premised on plaintiffs' lack of consent
to sell items with General Yeagers' name and likeness because of
contract breaches and fraud on the part of defendants.
Plaintiffs could not prove their case without proving that
defendants either engaged in the fraudulent conduct or breached
an agreement with plaintiffs.  Plaintiffs' claims for accounting,
unjust enrichment, and equitable rescission were similarly all
based upon defendants' alleged misappropriation, breach of
contract, and fraud.  Finally, defendants are not requesting
reimbursement for any attorney's fees relating to research on any
counterclaims defendants may have had.  Accordingly, the court
will not reduce the lodestar amount because plaintiffs' claims

1   were so intertwined that apportionment between them by defendants

2   is not required.

3          Plaintiffs also contend that the lodestar should be

4   reduced because defendants' motion for summary judgment contained

5   a number of allegedly irrelevant facts in an attempt to undermine

6   the character of General Yeager and Victoria Yeager and prejudice

7   the court.  While some facts in defendants' motion for summary

8   judgment were irrelevant, the suggestion that defendants were

9   attempting to prejudice the court are unfounded.  Such concerns

10  may be valid if defendants' statements were made at trial in

11  front of a jury; however, the court has both the obligation and

12  experience to dismiss irrelevant statements and objectively

13  decide the law at summary judgment.  Research on the credibility

14  of witnesses is not irrelevant for trial and accordingly was a

15  relevant area of research for defendants.  Defendants' research

16  on other court actions involving General Yeager also proved

17  relevant for defendants' statute of limitations defense, since it

18  helped prove that plaintiffs were on notice of claims they had

19  against defendants.  (See Order re: Mot. Summary Judgment at 27.)

20  The court does not believe that defendants have attempted to "use

21  the court processes for an improper purpose" and therefore

22  declines to reduce the lodestar amount on that ground.

23          After reviewing the briefs, depositions, and other

24  evidence before the court, the court finds that given the

25  complexity of the case and defendants' good-faith efforts to

26  avoid and write off costs that the lodestar amount need not be

27  increased or reduced.

28      C.   Costs

1    Defendants also ask for a number of costs not
2 previously included in their Bill of Costs.  Out-of-pocket costs
3 and expenses incurred by an attorney that would normally be
4 charged to a fee-paying client are recoverable as attorney's
5 fees.  United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d
6 403, 407 (9th Cir. 1990).  Plaintiffs do not object to
7 defendants' request for reimbursement of $1,586.58 for costs
8 associated with counsel's travel to depositions.  The court will
9 accordingly award these costs.  See Foothill-De Anza Cmty.
10 College Dist. v. Emerich, 158 Cal. App. 4th 11, 30 (2007).

11    Plaintiffs do object, however, to defendants' request
12 for $2,610.50 in Westlaw charges associated with legal research
13 in the case.  A number of courts have allowed electronic legal
14 research to be charged as attorney's fees.  See Trustees of
15 Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins.
16 Co., 460 F.3d 1253, 1258-59 (9th Cir, 2006); Cal. Common Cause v.
17 Duffy, 200 Cal. App. 3d 730, 753 (1987).  The billing statements
18 submitted to the court indicate the amount defendants' were
19 charged for research at each billing date.  Noonan's declaration
20 also indicates that each client has an individualized billing
21 number so that the firm can separate Westlaw costs among clients.
22 (Noonan Decl. ¶ 59.)  Accordingly, the court finds plaintiffs'
23 concern that defendants' counsel may be receiving more money than
24 they pay for the service unfounded and will award the Westlaw
25 charges to defendants.

26    Defendants finally request that $2,740 in costs
27 initially denied by the court as part of their bill of costs be
28 awarded as attorney's fees.  Costs rejected as taxable costs in a

21

1   bill of costs may be awarded as attorney's fees may be recovered

2   as attorney's fees.  See United Steelworkers of Am., 896 F.2d at

3   407.  Plaintiffs have not objected to or provided any reason why

4   the court should deny defendants' request.  Accordingly, the

5   court will award the costs previously denied by the court in

6   defendants' bill of costs as attorney's fees.

7   III. Conclusion

8          Based on the foregoing discussion, defendants will be

9   awarded the following:

10  A. Fees

11  Lodestar Calculation

12  | Person | Rate | Hours | = |
    |---|---|---|---|
13  | Noonan | $400 | 630.2 | $252,080.00 |
14  | Benbrook | $400 | 8.3 | $3,320.00 |
15  | Croxall | $150 | 32.0 | $4,800.00 |
16  | Kellogg/Nelson | $75 | 131.9 | $9,892.50 |
17
18                                      $270,092.50

19  Deductions:

20  A.   Partner Doing Paralegal Work

21       -$1,170.00

22  B.   Paralegals Doing Clerical Work

23       -$345.00

24  _____

25  **Total: $268,677.50**

26

27  B. Costs

28  Item                    Amount

                            22

1  Deposition Travel          $1,568.58

2  Westlaw fees               $2,610.50

3  Previously Denied Costs  $2,740.00

4  _____

5  **Total: $6,919.08**

6

7         IT IS THEREFORE ORDERED that defendants' motion for

8  attorney's fees and costs be, and the same hereby is, GRANTED in

9  the amount of $275,596.58.

10  DATED:   June 3, 2010

11

12  _____

13  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28